ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

# EXHIBIT 1

| | |
|---|---|
| STATE OF SOUTH CAROLINA | COURT OF COMMON PLEAS |
| COUNTY OF LEXINGTON | C/A No. 2018-CP-_____ |
| Walter P. Rawl & Sons, Inc., | |
| Plaintiff, | **SUMMONS** |
| v. | |
| RSM US LLP, | |
| Defendant. | |

TO:     RSM US LLP

You are summoned and required to answer the complaint in this matter, a copy of which is being served on you. You are required to serve a copy of your answer to this complaint on plaintiff's attorneys listed below within thirty (30) days after you are served, not including the date of service. If you fail to answer the complaint in that time period, judgment by default will be entered against you for the relief requested in the complaint.

RICHARDSON, PATRICK, WESTBROOK & BRICKMAN

By:     __s/Chris Moore_____
Chris Moore (SCB 77934)
Matthew Nickles (SCB 80364)
2700 Middleburg Drive, Suite 220
Columbia, SC 29204
T: 803.259.3525
F: 803.541.9625

BROWN & BREHMER
Karl Brehmer (SCB 12849)
PO Box 7966
Columbia, SC 29202
T: 803-771-6600

Dated: December 7, 2018                                    **Attorneys for Plaintiffs**

1

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

| STATE OF SOUTH CAROLINA | COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF LEXINGTON | C/A No. 2018-CP-_____ |
| Walter P. Rawl & Sons, Inc., | |
| Plaintiff, | **COMPLAINT** (Jury trial demanded) |
| v. | |
| RSM US LLP, | |
| Defendant. | |

Plaintiff alleges as follows:

## PARTIES & JURISDICTION

1.  Walter P. Rawl & Sons, Inc. ("WPR") is a South Carolina corporation with its principal place of business in Lexington County, South Carolina.

2.  Defendant RSM US LLP ("RSM") is an Iowa limited liability partnership with its principal place of business in the state of Illinois.

3.  Venue is proper in this Court because the most substantial part of the acts or omissions giving rise to the case occurred in Lexington County and the parties agreed to litigate claims in the courts of South Carolina.

## FACTUAL BACKGROUND

4.  WPR is a family owned farming operation that has been in operation since 1925.

5.  WPR traces its roots to the Rawl family farm and today employs more than six hundred people.

6.  Today, WPR's operation is vertically integrated. It manages and oversees all aspects of its vegetable production from the field through delivery, including growing, harvesting, processing, and distributing its products in more than thirty states.

2

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

7.      Defendant RSM is the U.S. member firm of RSM International, a global network of independent audit, tax, and consulting firms.

8.      As part of its business, RSM purports to provide consulting services on technology, management, and enterprise resource planning ("ERP").

9.      ERP is business processes management software that allows an organization to use a system of integrated applications to manage the business more effectively.

10.     RSM's ERP consulting group is a value-added reseller ("VAR") in that the ERP and technology management services it offers includes the use or re-sale of third-party software to clients with adjustments to the software products provided by RSM and tailored to each client's specific needs and goals.

11.     Beginning in June 2016, WPR began researching new ERP software and data storage systems.

12.     WPR is a unique business because not only is it an agricultural grower but it also manufactures food products, like bagged greens, and handles its own logistics.

13.     In 2016, WPR sought an ERP system that could handle the various aspects of its business including field management, processing, and warehousing, and one that could integrate with its logistics software.

14.     Key goals and requirements for WPR were:

   A.    A warehouse management system to handle and track WPR vegetable products all the way from field operations, processing, production, inventory, truck loading, and through delivery;

   B.    A system that would provide reports that were easy to access and analyze;

   C.    A system that would integrate with WPR's logistics software (McLeod / FMS);

3

    D.    A system designed for the produce industry that would assist WPR in its Food Safety Modernization Act ("FSMA") compliance requirements and monitoring; and

    E.    A go-live date by August or September 2017 to ensure smooth integration prior to WPR's busy season in late 2017.

15. WPR met with several consulting and software firms, some of which conceded they could not meet WPR's requirements.

16. RSM, however, assured WPR that it could meet and exceed WPR's requirements.

17. RSM gave these assurances after a number of meetings in the second half of 2016 to discuss WPR's systems and expected deliverables.

18. RSM assured WPR that it could meet WPR's expectations without extensive customization by moving WPR over to Microsoft Dynamics 365 ("D365"),

19. RSM assured WPR that D365's pre-configuration could meet and exceed WPR's goals and requirements for its "field to delivery" enterprise without substantial modifications.

20. At all times, RSM was aware that WPR sought an EPR solution that would not require extensive customization due to the time and cost such customization would require.

21. RSM assured WPR that RSM could meet WPR's ultimate goal of implementing infrastructure and systems that are agile and scalable that would provide a foundation for growth of its current business and support new business in the future.

22. RSM represented to WPR during their discussions that RSM had successfully implemented D365 into other major domestic produce companies' systems and, as such, D365 could easily meet WPR's objectives.

23. RSM also made a number of representations about the D365 product including:

4

A. D365 has a "library" full of standard operating procedures that would make the training and learning of D365 easy for WPR and its employees;

B. D365 has a library of more than 800 standard reports and WPR would not need many, if any, custom reports;

C. D365 has a user friendly report-writer that would provide helpful and customizable dashboards for sales and other departments;

D. D365 would expand WPR's Electronic Data Interchange (EDI) to all its major customers;

E. D365 could track WPR's pallets and Reusable Plastic Containers (RPCs);

F. D365 could direct the Receiving department where to put incoming product; and

G. D365 includes a Field Management software that was so sophisticated that it came with a mobile app that enabled the harvesters to key in their harvests in real time so that the Receiving, Shipping, and Sales departments would know when to expect incoming product.

24. During these meetings, RSM assured WPR that the team assigned to WPR's account had successfully implemented this software many times for other customers, that RSM had a team of skilled and knowledgeable consultants with extensive implementation experience with this software, and if the assigned RSM team did not have the answer, they could reach into the RSM network and get answers.

25. RSM assured WPR that RSM could install D365's "out-of-the-box" solution and RSM would create whatever customizations WPR needed. RSM assured WPR that D365's pre-configuration could handle WPR's needs and any customizations would be minimal in scope.

26. In the event D365's out-of-the-box solution would not work, RSM agreed that customization could be accomplished through the use of Business Requirements Documents (BRDs). BRDs are agreed upon software modifications and customizations necessary to manage WPR's business process needs.

27. RSM recommended this as the most expeditious and least expensive approach in order to meet the September 2017 go-live deadline.

28. Relying on these representations, WPR partnered with RSM.

29. WPR entered into a scope of work agreement ("SOW") and master services agreement with RSM that reflects these representations in or around February 2016.

30. The SOW agreement references RSM's recommendation to implement D365 with RSM's pre-configuration and methodology to reduce project duration and cost to WPR.

31. Once RSM began implementing D365 it quickly became clear that RSM's pre-configuration could not execute a number of critical deliverables under the SOW at all or without extensive customization, time, and cost.

32. A host of problems ensued as WPR worked to understand and incorporate the new system with direction from RSM.

33. Key failures in the product's implementation were:

   a. RSM's failure to follow their own SOW for a successful implementation and go-live.

   b. RSM's failure to follow the prescribed documentation from Microsoft for a successful implementation.

   c. RSM's failure to follow its own prescribed methodology for implementation.

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

    d.    RSM's failure to adequately test the software and to determine if the functionality of the software worked adequately and if it addressed the specific business requirements of WPR.

34.    As the implementation progressed, RSM found issues and problems that, as late as six months after the last failed mock go-live date, were still not resolved. Some of these WPR processes had been spelled out in detail and given to RSM in 2016 prior to WPR agreeing to purchase the RSM services and signing the SOW.

35.    Specific examples of failures in RSM's implementation of its pre-configured software include:

    a.    Failure to address standard aspects of the produce industry (for example, reports based on a "ship date" not an "invoice date").

    b.    Failure to successfully produce even one report for WPR to review (out of the 29 WPR report samples given to RSM as critical to their system).

    c.    The report writer Power BI was never implemented.

    d.    Failure to address the WPR necessary reports and the library of over 800 standard reports available until six months after the last failed mock-go-live date.

    e.    Failure to produce the Sales Order Inventory report (or Inventory Management Screen (IMS) in RSM vernacular) which is vital to WPR sales, shipping, scheduling, purchasing departments.

    f.    Failure to provide a FSMA compliant product flow through the processing plant at WPR.

    g.    Failure to have a successful flow of raw material into production.

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

h.  Failure to provide the "dashboards" for the Sales Department that were demonstrated.

i.  Failure to provide successful integration with the logistics software used by WPR.

j.  Failure of the software to direct the Receiving Department where to put incoming product due to the software lacking sufficient development to be used for that purpose.

k.  Failure of the software to properly handle inventory control of anything but the final product.

l.  Failure of the software to track the pallets and RPCs.

m.  Failure to complete the required customizations spelled out in various BRDs that were critical to a successful go-live for WPR and for WPR to function in the software.

n.  Failure to have bills of ladings print correctly from the system.

o.  Failure to have Produce Traceability Initiative (PTI) labels print correctly from the system.

p.  Failure to complete the pending task list of critical items needed for a successful mock go-live.

q.  Failure of RSM to provide consultants on the WPR project with the skill set spelled out in the SOW.

r.  Contrary to its sales representations, RSM conceded, five months after the last failed mock go-live date, that the software is not used nor capable to manage growing operations, a key request of WPR.

s.  Failure to provide the mobile app for use by the harvesters to report their harvests in real-time, admitting that the technology did not exist six months after the last failed mock go-live date.

8

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

  t. Failure of RSM to perform their tasks and responsibilities as spelled out by various RSM and Microsoft documents, and their decision to move forward anyway with an "at risk" mock go-live.

36. As a result of these failures, the system and services purchased by WPR failed and the new system never was implemented.

37. RSM was never able to get the system to function end-to-end for any transaction.

38. This was due in part because the RSM team assigned to this services agreement had never before done an implementation of the new D365 cloud-based program.

39. From January 2018 to mid-March 2018, RSM provided an inexperienced consultant on-site, and still the system could not process one order smoothly through the system.

40. Accordingly, in mid-March 2018, WPR put a hold on moving forward with RSM and its software.

41. On or about June 7, 2018, WPR sent to RSM a "right to cure" letter as called for under the Master Services Agreement.

42. RSM has not cured its breach, paid damages, or otherwise responded to the "right to cure" letter.

43. WPR has paid over $1,600,000 to RSM under the Statement of Work and Master Services Agreement described in this Complaint, but has not received any of the promised benefits.

44. In addition to the loss of cash payments made to RSM, WPR has additionally suffered wasted opportunity costs, wasted purchases on necessary equipment and devices related to the software functionality, and lost employee time and morale in its fruitless attempts to install and implement RSM's software solutions.

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

## Causes of action

**One.    Breach of Contract**

45.     Plaintiff fully incorporates all prior paragraphs.

46.     WPR and RSM entered into a binding contract, supported by valuable consideration.

47.     As set forth in detail in the foregoing paragraphs, RSM breached the contract by unjustifiably failing to provide the promised services to WPR.

48.     RSM, after reasonable opportunity, has failed to cure any breach or deficiency.

49.     As a direct and proximate result of RSM's breach of the contract, WPR suffered damage in the form of cash payments made to RSM for undelivered performance and by other consequential damages to be proven at trial.

**Two.    Negligent Misrepresentation**

50.     Plaintiff fully incorporates all prior paragraphs.

51.     As set forth above, RSM made several statements of fact about the performance capabilities of the proposed software and its compatibility with WPR's business model.

52.     As set forth above, RSM's statements were false.

53.     RSM had a pecuniary interest in making the statements in order to secure WPR's business.

54.     RSM owed a duty of care to ensure that its statements made to WPR were truthful and accurate.

55.     RSM failed to exercise due care in making the false and misleading statements to WPR.

56.     WPR justifiably relied on the statements from RSM.

57.     WPR suffered pecuniary loss as a direct and proximate result of its reliance on RSM's statements, including cash payments made to RSM and other consequential damages.

**Three. Unjust Enrichment**

58. Plaintiff fully incorporates all prior paragraphs.

59. As set forth above, WPR conferred a non-gratuitous benefit on RSM in the form of payments to RSM for promised services.

60. However, RSM failed to deliver the promised services.

61. RSM realized value from the payments made to it by WPR.

62. It would be unfair and inequitable for RSM to retain the value conferred on it by WPR under the circumstances as set forth in this complaint.

**Four.   Fraud**

63. Plaintiff fully incorporates all prior paragraphs.

64. RSM made several representations to WPR regarding its goods and services.

65. Such representations included, but are not limited to: (a) the team assigned to WPR's account had successfully implemented this software many times for other customers; (b) that RSM had a team of skilled and knowledgeable consultants with extensive implementation experience with this software; (c) if the assigned RSM team did not have the answer, they could reach into the RSM network and get answers; and (d) RSM could install D365's "out-of-the-box" solution and RSM would create whatever customizations WPR needed, but any necessary customizations would be minimal.

66. These representations were false.

67. These representations were material to WPR's selection and engagement of RSM.  Absent such representations, WPR would not have engaged RSM on such an important project.

68. Upon information and belief, RSM was aware of the falsity of such representations.

69. Upon information and belief, RSM intended WPR to rely on these representations.

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

70. At the time of the representations, WPR did not know of their falsity, and had a right to rely on their accuracy.

71. WPR relied on these representations and, as result, selected and engaged RSM.

72. As a proximate and direct result of its reliance on RSM's representations, WPR paid valuable consideration to RSM but did not receive any of the promised benefits, and further suffered other consequential damages.

**Five.   Breach of warranty**

73. Plaintiff fully incorporates all prior paragraphs.

74. Defendant warranted that its services would be performed with reasonable care and in a competent manner.

75. Defendant warranted that if its services were not performed with reasonable care and in a competent manner, RSM would refund WPR the fees WPR paid for the nonconforming services pursuant to the parties' agreement or, alternatively, re-perform the non-conforming services.

76. Plaintiff relied on RSM's representations and warranty that it could perform the work envisioned under the parties' agreement in a competent manner.

77. RSM failed to perform the work agreed to under the parties' agreement in a competent manner.

78. RSM failed to perform the work agreed to under the parties' agreement with reasonable care.

79. RSM failed to deliver a workable product to WPR as promised under the parties' agreement.

80. RSM breached the express and contractual warranty given WPR.

81. As a result, WPR has suffered damage as set forth above.

ELECTRONICALLY FILED - 2018 Dec 07 3:59 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

## Request for relief

82. Plaintiff requests the following relief:

    a. All economic damages due and owed;

    b. All consequential damages arising from defendant's conduct;

    c. All costs associated with this action as allowed by South Carolina law;

    d. Rescission;

    e. Prejudgment interest;

    f. And any other relief as this Court deems just and proper.

## Jury trial demanded

Plaintiff requests trial by jury as to all issues to the extent permitted by law.

Respectfully submitted,                    RICHARDSON, PATRICK, WESTBROOK & BRICKMAN

By:    s/Chris Moore_____
Chris Moore (SCB 77934)
Matthew Nickles (SCB 80364)
2700 Middleburg Drive, Suite 220
Columbia, SC 29204
T: 803.259.3525
F: 803.541.9625

BROWN & BREHMER
Karl Brehmer (SCB 12849)
PO Box 7966
Columbia, SC 29202
T: 803-771-6600

Dated: December 7, 2018                    **Attorneys for Plaintiffs**

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF LEXINGTON<br><br>Walter P. Rawl & Sons, Inc.,<br><br>      Plaintiffs,<br><br>v.<br><br>RSM US LLP,<br><br>      Defendants. | COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT<br><br>C/A no. 2018-CP-32-04185<br><br><br>**AFFIDAVIT OF SERVICE** |

KARISSA RICHARDSON, being first duly sworn, deposes and says of her own personal knowledge:

1. I am a paralegal who works for the attorney for the Plaintiff in the above-captioned action.

2. On or about December 11 2018, I did deposit in the United States mail in Columbia, South Carolina a Summons, Complaint addressed to RSM US, LLP, c/o Registered Agent, Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201. Return receipt for proof of service was also requested, pursuant to S.C. § 15-9-350.

3. I received the return receipt dated December 12, 2018, evidencing service. A copy of the return receipt is attached to this Affidavit and identified as Exhibit "A".

Further Affiant Sayeth Naught.

                      _____
                      KARISSA RICHARDSON

ELECTRONICALLY FILED - 2018 Dec 21 1:04 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

SWORN and subscribed before
me this 21 day of December, 2018.

_____
Notary Public for South Carolina
My Commission Expires: 5/27/26

[Notary Seal: HEATHER M. GUIDOTTI, NOTARY PUBLIC, SOUTH CAROLINA]

ELECTRONICALLY FILED - 2018 Dec 21 1:04 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

# EXHIBIT "A"

ELECTRONICALLY FILED - 2018 Dec 21 1:04 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185

**U.S. Postal Service™ CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

Rawl

Sent To: RSM US LLP c/o RA
Street and Apt. No., or PO Box No.: 1703 Larel St.
City, State, ZIP+4®: Columbia, SC 29201

PS Form 3800, April 2015 PSN 7530-02-000-9047

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:
   RSM US, LLP
   c/o Corporation Service Company
   Registered Agent
   1703 Larel St
   Columbia, SC 29201

   9590 9402 3734 7335 4754 65

2. Article Number (Transfer from service label)
   7017 3380 0000 3127 0437

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X [signature] — ☐ Agent ☐ Addressee
B. Received by (Printed Name): C. Ditten   C. Date of Delivery: 12/12/18
D. Is delivery address different from item 1? ☐ Yes ☐ No

3. Service Type
   ☐ Adult Signature
   ☐ Adult Signature Restricted Delivery
   ☑ Certified Mail®
   ☐ Certified Mail Restricted Delivery
   ☐ Collect on Delivery
   ☐ Collect on Delivery Restricted Delivery
   ☐ Insured Mail
   ☐ Insured Mail Restricted Delivery (over $500)
   ☐ Priority Mail Express®
   ☐ Registered Mail™
   ☐ Registered Mail Restricted Delivery
   ☑ Return Receipt for Merchandise
   ☐ Signature Confirmation™
   ☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

ELECTRONICALLY FILED - 2018 Dec 21 1:04 PM - LEXINGTON - COMMON PLEAS - CASE#2018CP3204185